**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATHAN RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION No. 08-1675 |
| | ) | Judge Fischer |
| | ) | Magistrate Judge Bissoon |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

For the reasons that follow, the motion to dismiss filed Defendants Beard, Capozza, Coleman, Cristini, Davis, Folino, Geehring, Harry, Jackson, Mark, Brenda Martin, Jeffrey Martin, McCombie, Muhammad, Nickolas, Reisinger, Scott, Smith, Swartz, Tanner, Watson, and Winfield ("Moving Defendants") (ECF No. 50) will be granted with prejudice in part, granted without prejudice in part, and denied in part. Additionally, Defendants Cowan, Workman, LeMasters, Price, Gent, John/Jane Does mail inspectors #1-5, Menchyk, Rogers, Pollock, Walker, Lindley, Grainey, Macknair, Perez, Valdo, Dietz, and the Bureau of Treatment Services ("New Defendants") will be dismissed for failure to prosecute. Finally, to the extent that she is a party to this lawsuit, claims against "Defendant" Varner will be dismissed.

### I. Relevant Factual and Procedural History

Plaintiff Nathan Riley ("Plaintiff") is a State prisoner currently housed at the State Correctional Institution at Greene ("SCI-Greene") in Waynesburg, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that Defendants violated his rights under the First Amendment, as well as the Due Process and Equal Protection

Clauses of the Fourteenth Amendment.  <u>See generally</u> Am. Compl. (ECF No. 40).  Plaintiff also

raises claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA),

42 U.S.C. § 2000cc *et seq*., as well as various State law claims.  This suit commenced on

December 8, 2008, when this Court received Plaintiff's motion to proceed *in forma pauperis*

("IFP").  (ECF No. 1).  Plaintiff was granted leave to proceed IFP on December 10, 2008.  (ECF

No. 2).  Various Defendants filed a partial motion to dismiss on November 2, 2009.  (ECF No.

22).  In response to this, Plaintiff moved to file an amended complaint on May 10, 2010 (ECF

No. 37), which was granted by United States Magistrate Judge Cathy Bissoon the following day

(ECF No. 39).

　　　In his amended complaint (ECF No. 40), Plaintiff raised, for the first time, claims against

New Defendants, as well as "Defendant" Varner.  As of the date of this writing, neither New

Defendants or Defendant Varner have been served the amended complaint.[1]  Moving Defendants

filed the instant motion to dismiss the amended complaint on July 23, 2010.  (ECF No. 50).

Plaintiff has responded thereto.  (ECF Nos. 57-58).  This motion is ripe for disposition.


　　　**A.**　　**<u>Administrative Confinement</u>**

　　　Plaintiff alleges that, on May 15, 2007, he was transferred to SCI-Greene and placed in

administrative confinement ("AC").  Am. Compl. (ECF No. 40) at 3.  Plaintiff avers to receiving

---

[1] There is a pending report and recommendation recommending the dismissal of New Defendants for failure to prosecute, which will be addressed in the order which follows this opinion.  <u>See</u> (ECF No. 62).  Additionally, Plaintiff alleges claims against newly-named "Defendant" Varner.  <u>Id.</u> at 62.  This individual does not appear in the caption of the amended complaint, and the docket does not indicate that she was ever served a copy of the amended complaint.  As such this Court would not have personal jurisdiction over her due to lack of service of process.  <u>See</u> Fed.R.Civ.P. 12(b)(5).  Even if Varner had been a properly-served Defendant, Plaintiff has failed to allege personal involvement against her, for the reasons stated in Part III.G of this memorandum opinion, *infra*.

a so-called "other report" on this date, which indicated that Plaintiff was "in danger by/from some person(s) in the facility and [could not] be protected by alternate measures. . . ." Id. Plaintiff alleges that this report was issued by Defendant Tanner, and signed by Defendant Winfield. Id. Plaintiff claims that the other report was so vague that it was impossible for him to prepare an adequate response to the assertions within it because it did not indicate what information, if any, was relied upon to form the conclusion that Plaintiff was in danger. Id.

The allegations in the amended complaint indicate that Plaintiff appeared before the Program Review Committee ("PRC") at SCI-Greene, on or before June 8, 2007.[2] Id. at 4. The PRC panel, comprised of Defendants Jackson, Brenda Martin, and Smith, reviewed the other report and determined that Plaintiff's continued administrative confinement was appropriate. Id. Plaintiff asserts that there was insufficient evidence to support this decision. Id. at 5. Plaintiff avers that he appealed the determination of the PRC panel to Defendant Folino on June 8, 2007, who affirmed the PRC's decision on June 12, 2007. Id. at 4. Plaintiff filed a second-level appeal, which was denied by Defendant Mark on June 26, 2007. Id.; see also (ECF No. 4-1) at 5- 8. Plaintiff claims that the alleged actions of these Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff also alleges that the actions of Defendants Jackson, Brenda Martin, and Smith constituted "reckless misrepresentation." (ECF No. 40) at 5.

Plaintiff again appeared before a PRC panel – this time consisting of Defendants Harry, McCombie, and Swartz – on August 7, 2007. Id. at 7. Plaintiff avers to having the opportunity to question his placement in administrative segregation, and sought more information regarding

---

[2] While Plaintiff does not provide the date of his initial hearing before a PRC panel in his amended complaint, he indicates in his response to the motion to dismiss that it was on May 17, 2007. See (ECF No. 58) at 5.

the underlying reasons for his AC status.  Id.  Plaintiff claims that the review conducted by the

PRC on this date was "nothing but a 'hollow formality.'"  Id.  The PRC continued Plaintiff's

administrative confinement, and Plaintiff remained in the Restricted Housing Unit ("RHU").  Id.

Plaintiff appeared before a PRC panel to review his administrative confinement once

again on November 15, 2007.  Id. at 8.  Plaintiff avers to seeking information regarding the

underlying reason for his AC status at this hearing, and to requesting release to the prison's

general population.  Id.  The panel, this time consisting of Defendants Harry, Smith, and Jeffrey

Martin, refused to answer his questions and denied his request, once again continuing Plaintiff's

administrative confinement.  Id. [3]

According to the amended complaint, this scenario played out several more times before

various PRC panels reviewing Plaintiff's AC status.  Panel reviews took place on:

February 5, 2008 – consisting of Defendants McCombie, Winfield, and Coleman, id. at 9-10;

April 29, 2008 – consisting of Defendants McCombie, Winfield, and Jeffrey Martin, id. at 11;

and July 22, 2008 – consisting of Defendants McCombie, Winfield, and Jeffrey Martin, id. at 12.

Plaintiff characterizes these reviews as perfunctory, hollow, meaningless, and being

unsupported by "some evidence."  See, e.g., id. at 12.  Additionally, Plaintiff asserts that the PRC

hearings were not recorded, in violation of 2 Pa.C.S.A. § 504,[4] and that the hearings themselves

---

[3] Plaintiff also asserts, without elaborating, that the various panels did not conduct their meetings
"consistent with the mandatory language of" 37 Pa. Code. 93.11(b), nor do they comport with
DC-ADM 802.  See Am. Compl. (ECF No. 40) at 10.

[4] 2 Pa.C.S.A. § 504 reads, in pertinent part: "All testimony [given at an adjudicative hearing of a
Commonwealth agency] shall be stenographically recorded and a full and complete record shall
be kept of the proceedings."

violated 37 Pa. Code § 93.11(b)[5] as well.  Additionally Plaintiff asserts that the PRC panel

hearings violated his rights under Article 1, § 26 of the Pennsylvania Constitution,[6] as well as

Department of Corrections ("DOC") regulation DC-ADM 802.  (ECF No. 40) at 18.

Plaintiff also generally asserts that the periodic reviews of his placement in the RHU by

Moving Defendants Capozza and Smith, as well as New Defendant Workman, were deficient

due to their hollow and perfunctory nature, and because these Defendants did not state their

reasons for continuing his administrative segregation.  Id. at 50.  Plaintiff argues that this

violated the mandatory language of 37 Pa. Code § 93.11(b) as well as the Pennsylvania

Constitution and the Due Process Clause of the Fourteenth Amendment.  Id. at 50-51.

Plaintiff makes similar allegations against Moving Defendant McCombie, and New

Defendants Lindley and Grainey, with respect to an April 2, 2009, PRC review of his AC status.

Id. at 50-51.  He asserts that the review conducted by Moving Defendant Winfield and New

---

[5] 37 Pa. Code § 93.11 reads:

> (a) An inmate does not have a right to be housed in a particular
> facility or in a particular area within a facility.
>
> (b) Confinement in a restricted housing unit (RHU), other than
> under procedures established for inmate discipline, will not be
> done for punitive purposes. The Department will maintain written
> procedures which describe the reasons for housing an inmate in the
> RHU and require due process in accordance and with established
> principles of law for an inmate who is housed in the RHU. Inmates
> confined in the RHU will be reviewed periodically by facility staff.

This Court notes that, while Plaintiff cites to subsection (b) multiple times throughout the
complaint, he did not once cite to the provision in subsection (a) which explicitly states that an
inmate "does not have a right to be housed . . . in a particular area within a facility."

[6] Article I, § 26 of the Pennsylvania Constitution provides: "Neither the Commonwealth nor any
political subdivision thereof shall deny to any person the enjoyment of any civil right, nor
discriminate against any person in the exercise of any civil right."

Defendants Macknair and Walker on June 23, 2009, was deficient in the same manner. Id. at 52-53.

Plaintiff filed first and second level appeals to his continuing administrative segregation with Moving Defendant Folino on July 7, 2009, and New Defendant Perez on July 22, 2009, respectively. Both of these Defendants affirmed the decision to continue Plaintiff's administrative confinement. Id. at 53-54. Plaintiff asserts that this violated the Due Process Clause of the Fourteenth Amendment.

Plaintiff makes similar allegations of violations of due process and Pennsylvania State law with respect to the continuation of his administrative confinement during his PRC review before Moving Defendants McCombie and Smith, as well as New Defendant Grainey. Id. at 54-55. Plaintiff admits to having the opportunity to contest his confinement in writing at that hearing, but alleges that these Defendants "failed to rebut" this statement. Id. at 54-55.

At the conclusion of his amended complaint, Plaintiff indicates that he was reclassified by the PRC to long term administrative confinement without a hearing or notice. Id. at 75. Plaintiff asserts that this violates the "mandatory language" of various State laws and DOC regulations, as well as the Fourteenth Amendment to the Constitution of the United States, and Article I, § 26 of the Pennsylvania Constitution. Id. at 76. He alleges that Moving Defendants Jackson, Brenda Martin, Smith, Harry, McCombie, Swartz, Jeffrey Martin, Winfield, Coleman, and Capozza, as well as various New Defendants, are liable for this act. Id. at 76.

Plaintiff also claims that Moving Defendants Cristini and Nickolas, as well as New Defendants Cowan and Workman, violated his rights under the Due Process Clause of the Fourteenth Amendment by recommending that he remain in administrative confinement without

a hearing.  <u>Id.</u> at 13-14.  <u>See also</u> (ECF No. 4-1) at 18.[7]  Plaintiff's allegations with respect to this

occurrence are vague, and it is unclear whether they did this as part of a PRC panel, or made

their recommendations to the panel as witnesses or through a report as part of the PRC review

process.[8]  Plaintiff asserts that this violated his right to due process under the Fourteenth

Amendment.  (ECF No. 40) at 14.

Plaintiff also alleges that Defendant Winfield "'participated directly in the decision-

making role'" to place Plaintiff in administrative status and, consequently, his participation on

the PRC panels of February 5, 2008, April 29, 2008, July 22, 2008, and June 23, 2009, deprived

Plaintiff of an "impartial tribunal."  <u>Id.</u> at 14, 56.  Plaintiff asserts that this violated his

Fourteenth Amendment due process rights.  <u>Id.</u> at 14, 56.

Plaintiff additionally alleges that he has been placed and retained in administrative

segregation due to his race and religion, and that African-Americans and Muslims like himself

are subject to discrimination by the PRC.  <u>Id.</u> at 15.  Plaintiff provides some statistics in his

complaint that the corrections staff at SCI-Greene is overwhelmingly Caucasian, and that the

inmates in the RHU are predominately African-American.  <u>Id.</u> at 15.  The data provided by

Plaintiff indicate that the total population of SCI-Greene is 1,923 inmates, 1,235 of whom are

African-American.  The RHU at SCI-Greene houses at least 266 individuals, 184 of whom are

African-American, and 96 are Muslim.  <u>Id.</u> at 15-16.

---

[7] This document, which was submitted as an exhibit in support of the initial complaint and was explicitly relied upon by Plaintiff in the amended complaint, indicates that prison staff had concerns regarding the risk that Plaintiff posed to prison security, and characterized Plaintiff as assaultive, exhibiting behavioral problems and engaging in threatening behavior.  <u>See</u> (ECF No. 4-1) at 18.

[8] If it is the former, the Court's analysis with respect to the PRC applies to these claims.  If it is the latter, this Court can discern no constitutional claim against these Defendants for such acts, as they would not have been the ultimate decision-makers with respect to Plaintiff's administrative confinement and would, instead, have merely acted as witnesses.

Put another way, according to Plaintiff's statistics, about 15% of the African-American population of SCI-Greene is housed in the RHU, which is slightly higher than the roughly 14% of the total inmate population that is housed there. About 36% of the population of the RHU is Muslim. Plaintiff provides no data regarding the proportion of total inmates at SCI-Greene who are Muslim.

Plaintiff also raises claims against Moving Defendants who reviewed his appeals to the decision of the PRC panels to continue his administrative confinement. Plaintiff alleges that Defendant Folino and Mark's respective affirmances of PRC decisions on February 20, 2008 and April 7, 2008, violated his rights under the Due Process Clause of the Fourteenth Amendment. Id. at 16-17. Additionally, Plaintiff alleges that these Defendants were placed "on notice" of alleged racial discrimination involving the placement and retention of inmates in the RHU, and their affirming the PRC decisions violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Id. at 16-17. Plaintiff further alleges that their refusal to order the PRC to record its hearings stenographically or electronically violated his rights under Article 1 § 26 of the Pennsylvania Constitution, as well as State law requiring the recording of "adjudications" made by the Commonwealth. Id. at 19-20; see also 2 Pa.C.S.A § 504.

Plaintiff also asserts that he was placed on administrative confinement for filing grievances and instituting three lawsuits against DOC staff. (ECF No. 40) at 21-22. He specifically names Defendants Folino, Jackson, Brenda Martin, Smith, McCombie, Harry, Swartz, Jeffrey Martin, Coleman, and Winfield as being liable for this claim under the First Amendment. Id. at 22.

**B.      Access to Courts Claims**

Plaintiff alleges that, while in administrative segregation, he was denied access to "trained legal aides or other prisoner's [*sic*]"  Plaintiff avers that as a result of this he was unable to file a timely "docketing statement sheet" in his then-pending appeal to his denial of a habeas petition in State court, which was resulted in its dismissal.[9]  Id. at 22.  Plaintiff asserts generally that, because his AC status and educational level prohibited him from being provided legal assistance from other inmates, Moving Defendants Jackson, Smith, Brenda Martin, McCombie, Harry, Swartz, Jeffrey Martin, Coleman, Winfield and Folino are liable, as members of the PRC or as reviewers of PRC decisions, for violations of Plaintiff's rights under the First and Fourteenth Amendments.  Id. at 22-23; see also (ECF Nos. 37-2 – 37-7).  Plaintiff also asserts that New Defendant LeMasters denied Plaintiff's access to inmates knowledgeable in the law, and New Defendant Price denied his grievance of the issue.  Id. at 23-24.  Moving Defendants Folino and Watson denied Plaintiff's grievance appeals, which Plaintiff asserts further violated his rights under the First Amendment and the Fourteenth Amendment's Due Process Clause.  Id. at 25-26.

**C.      Mail Claims**

Plaintiff alleges that, on June 1, 2007, he received mail from an attorney representing the Commonwealth, which was opened outside of his presence.  Id. at 28.  Plaintiff admits that this piece of mail, although from an attorney, lacked an attorney control number.  Id.  Plaintiff filed a grievance with respect to this incident, which was denied by Defendant Scott.  Id. at 29; see also

---

[9] The Pennsylvania statutory provision regarding State court habeas proceedings may be found at 42 Pa.C.S.A. § 6502.

(ECF No. 4-1) at 20. Defendants Folino and Reisinger affirmed Defendant Scott's denial of Plaintiff's grievance on first and second level appeal, respectively. (ECF No. 40) at 29-31. Plaintiff asserts that they violated his rights under the First Amendment, and the Due Process Clause of the Fourteenth Amendment.

A similar incident occurred on December 17, 2007, when mail from the Prothonotary of the Superior Court of Pennsylvania which lacked an attorney control number was opened outside of his presence. Id. at 31-32. Once again, Plaintiff filed a grievance, which Defendant Scott denied. Id. at 32; (ECF No. 4-1) at 29. Defendants Folino and Watson affirmed on first and second level appeals, respectively. (ECF No. 40) at 33-35. Plaintiff asserts that this violated his rights under the First Amendment, as well as the Due Process clause of the Fourteenth Amendment.

Plaintiff asserts that, Defendant Geehring, the SCI-Greene mailroom inspector supervisor, committed "'gross negligence in managing subordinates who [allegedly] committed the unconstitutional acts'" with respect to these alleged issues with his mail. Id. at 35. Plaintiff also asserts that the acts of Defendant Geehring's subordinates expose him to liability under the First Amendment. Id. at 35-36.

On January 7, 2008, Plaintiff received mail from the United States District Court for the Middle District of Pennsylvania, as well as from the Philadelphia District Attorney's Office. Id. at 36. Neither of these pieces of correspondence bore attorney control numbers, and both had been opened outside of Plaintiff's presence. Id. Plaintiff filed a grievance, which was denied by Defendant Scott, who also recommended that Plaintiff be placed on grievance restriction. Id. at 37. Plaintiff asserts that this recommendation was in retaliation for Plaintiff engaging in the grievance procedure, and violated Pennsylvania law. See Id. at 37-38; see also (ECF No. 4-1) at

34-35.  Plaintiff asserts that Defendant Scott's allegedly retaliatory actions violated his rights of freedom of speech, assembly, and to petition the government for redress under the First Amendment, as well as Pennsylvania State law.  (ECF No. 40) at 37-38.

Similarly, Plaintiff alleges that, on September 3, 2008, he received a letter from an attorney representing the Pennsylvania Governor's Office that had been opened outside of his presence.  This letter did not bear an attorney control number.  Plaintiff asserts that this violated his First Amendment rights.  Id. at 61.  He filed a grievance with Defendant Scott, which was denied.  Id. at 61-62.  Plaintiff asserts that this denial further constituted a violation of his rights under the First Amendment.  Plaintiff appealed the denial of this grievance to Defendant Folino, who affirmed the initial determination.  Plaintiff asserts that this also was a violation of his rights under the First and Fourteenth Amendments.[10]  Id. at 62.

Plaintiff claims that New Defendants John and Jane Does are responsible for opening the multiple pieces of mail described above.  Id. at 63.  Plaintiff concludes that Defendant Geehring, as their supervisor, has "fail[ed] to properly manage subordinates" and is thus liable for their alleged violations of Plaintiff's rights under the First Amendment, as well as Pennsylvania tort law.  Id. at 64.

### D.     Religious Exercise Claims

Plaintiff indicates that he is an Orthodox Sunni Muslim.  Id.  He asserts that during the holy month of Ramadan, Muslims are obliged to observe a fast between dawn and sunset for 30 consecutive days.  Id. at 39.  He further asserts that "it is a central practice [of Islam] to break the

---

[10] Plaintiff alleges that he sent a second level appeal to Defendant Varner, which was also denied.  Id. at 62.

fast with dates at sunset . . . . Breaking the fast with dates has religious significance under the tenets of Islam. . . ." Id.

At SCI-Greene observant Muslims are permitted to purchase dates during Ramadan with which to break their daily fasts. On September 21, 2007, Plaintiff sent a request to Defendant Muhammed asking to be provided dates free of charge during Ramadan, due to his indigence. Id. at 39. This was denied. Plaintiff filed a grievance with respect to this denial, which was itself denied by Defendant Muhammed on the grounds that "no inmate received free dates." Id. at 40. Plaintiff alleges that this "diminished the overall spiritual experience of Ramadan by denying Plaintiff the ability to break fast with dates." Id. He asserts that Defendant Muhammed's actions violated his rights under the Free Exercise Clause of the First Amendment, and RLUIPA. Id.

Plaintiff filed first and second level appeals to the denial of this grievance with Defendants Folino and Watson, respectively. Id. at 41-42. Both affirmed the denial of the initial grievance. Id. at 41-42. Plaintiff asserts that these affirmances of the initial denial violated his rights under the Free Exercise Clause of the First Amendment, and RLUIPA. Id. at 41-42.

Plaintiff made a similar request to be provided with free dates during Ramadan of 2008. Id. at 64. Defendant Muhammed denied this request, and Plaintiff received no free dates with which to break his fast during Ramadan. Id. at 64-65. Plaintiff claims that this violated his rights under the Free Exercise Clause of the First Amendment, and RLUIPA. Id. at 65.

Plaintiff alleges that he filed a grievance with respect to this incident. Id. at 65. Moving Defendant Smith, along with New Defendant Menchyk, denied the grievance, responding that dates were not required to break the fast, and that no one was given free dates. Id. Plaintiff

argues that this response violated his rights under the Free Exercise Clause of the First Amendment, and RLUIPA.  Id.

Plaintiff filled an appeal of the denial with Defendant Folino, which was also denied. Plaintiff asserts that denial of the appeal violated his rights under RLUIPA and the Free Exercise Clause of the First Amendment.

Plaintiff next alleges that the Eid al-Fitr meal and prayer service "is an important observance in Islam that commemorates the 30-day fast of Ramadan."  Id. at 42.  Policy at SCI-Greene allows a feast celebrating this religious holiday, but requires those involved to pay a fee to partake of foodstuffs that are not normally provided by the prison's kitchens.  Plaintiff sent a request to Defendant Muhammed on September 21, 2007, informing him of Plaintiff's indigence and asking for a free meal from the Eid al-Fitr feast.  Id.  Defendant Muhammed did not respond. Id.  at 42-43.  Plaintiff sent a letter to Defendant Capozza requesting a free meal, but he also did not respond.  Id. at 43.  Plaintiff alleges that he did not receive a free meal from the Eid al-Fitr feast.[11]

Plaintiff submitted a grievance to Defendant Muhammed on November 6, 2007.  Id. at 43-44.  This was denied on the grounds that "[the] Eid al-Fitr feast is not an obligation on those who cannot afford the expense."  Id. at 44.  Plaintiff claims that Defendant Muhammed's actions "diminished the overall spiritual experience of Ramadan by denying Plaintiff of a meal from the Feast of Eid al-Fitr."  Id.  This, he asserts, was a violation of the Free Exercise Clause of the First Amendment, and RLUIPA.

---

[11] It is notable that nowhere in the complaint does Plaintiff allege that he was ever denied religiously acceptable meals at SCI-Greene.  Instead, Plaintiff's allegations, taken as true, indicate that he was unable to purchase preferred items of food of religious significance because he lacked the funds to do so.

Plaintiff filed first and second level appeals to Defendants Folino and Watson, respectively, who both affirmed the denial of the initial grievance.  Id. at 44-45.  Plaintiff asserts that these actions constituted denials of his rights under the Free Exercise Clause and RLUIPA. Plaintiff also avers that Defendant Capozza is liable for these violations as well by "denying" him a special meal for Eid al-Fitr in 2007.  Id.  at 46.

A similar occurrence took place with respect to the Eid al-Fitr feast at SCI-Greene in 2008.  On September 30, 2008, Plaintiff requested to be provided with a free special meal from the feast.  Defendant Muhammed denied this request and, as Plaintiff did not have sufficient funds to pay the fee for the special meal, he was not allowed to partake of the special foods served as part of the feast.  Id. at 67.  Plaintiff asserts that this violated his rights under the Free Exercise Clause and RLUIPA.  Id. at 67-68.  Plaintiff filed a grievance with respect to this issue, which was denied by Defendant Smith.  Id. at 68.  Plaintiff asserts that this denial has made Defendant Smith liable for violations of the Free Exercise Clause of the First Amendment, and RLUIPA.  Id.

Plaintiff appealed the denial of this grievance to Defendant Folino.  Defendant Capozza responded, and affirmed the initial determination.  Id. at 69.  Plaintiff asserts that this violated his rights under the Free Exercise Clause and RLUIPA.   Additionally, Plaintiff claims that Defendant Folino, by virtue of his position as Defendant Capozza's supervisor, is liable for this alleged violation of his rights as well.  Id. at 69-70.  Plaintiff filed second-level appeal with unserved Defendant Varner, who affirmed the initial denial.  Id. at 70-71.  He asserts that this, too, violated his rights under RLUIPA and the Free Exercise Clause of the First Amendment.  Id. at 71.

Plaintiff further argues that Defendant Folino, as superintendent of SCI-Greene, ultimately has control over the policy that Muslims who would like to partake of the special foods at the Eid al-Fitr feast must pay a fee. Id. at 70. Plaintiff characterizes this policy as "prohibiting indigent Muslim prisoners from receiving a meal from the feast of Eid al-Fitr, while accommodating Muslim prisoners who were financially able to pay. . . ." Id. Plaintiff explicitly states that this policy impermissibly targets indigents, and bars them from having a special meal from the feast due to their lack of funds. Id. Plaintiff argues that, by allowing this policy to exist, Defendant Folino violated his rights under the Free Exercise Clause of the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and RLUIPA. Id.

Plaintiff makes similar allegations regarding the Eid al-Adha feast at SCI-Greene. Plaintiff indicates that the Eid al-Adha meal and prayer service "is an important observance in Islam that 'commemorates the Prophet Abraham's willingness to sacrifice his son for Allah' and the day that marks the end of the pilgrimage to Mecca made each year by millions of Muslims." Id. at 46. Inmates at SCI-Greene are allowed to take part in a special feast celebrating Eid al-Adha, but must pay a fee to do so.

Plaintiff alleges that he wrote to Defendant Muhammed on December 13, 2007, to request a free meal from the feast of Eid al-Adha, due to his indigence. Id. at 47. Defendant Muhammed denied the request. Id. Plaintiff did not receive a free special meal from this feast, and, as a result "Defendant Muhammed diminished the overall spiritual experience of Ramadan[,]" thus violating Plaintiff's rights under the Free Exercise Clause of the First Amendment and RLUIPA. Id. at 47-48.

Plaintiff filed a grievance with respect to this issue, which was denied by Defendant Smith. Id. at 48. Plaintiff alleges the denial of this grievance violated his rights under the Free Exercise Clause of the First Amendment and RLUIPA. Id. at 48.

Plaintiff filed a first level appeal with Defendant Folino on January 11, 2008. Id. at 49. Having received no response, he wrote to Defendant Folino requesting information regarding the status of his appeal. Defendant Davis responded that an answer had already been sent. Plaintiff informed Defendant Davis that he had not received any reply, and requested a copy of the decision and be allowed to appeal *nunc pro tunc*. Id. Defendant Davis did not respond. Plaintiff also sent a so-called "Affidavit of Truth" to Defendant Davis, which also was ignored. Plaintiff alleges that, through his alleged bad acts and omissions, Defendant Davis violated his right to petition the government under the First Amendment. Id. at 50.

A similar event unfolded with respect to the Eid al-Adha feast at SCI-Greene in 2008. As before, Plaintiff sought to be provided with a free special meal from the feast by Defendant Muhammed. Id. at 70. This request was denied, and Plaintiff, who alleges that he lacked the funds to pay the required fee, did not receive special items of food from the feast. Plaintiff asserts that this was a violation of RLUIPA and his rights under the Free Exercise Clause of the First Amendment. Id.

Plaintiff filed a grievance with respect to this issue, which was denied. Plaintiff then sent an appeal to Defendant Folino, who affirmed the initial determination. Id. at 73. Plaintiff asserts that this violated his rights under the Free Exercise Clause of the First Amendment, and RLUIPA. Id. Plaintiff sent a second-level appeal to unserved Defendant Varner, which was denied by New Defendant Pollock. Plaintiff asserts that, due to her capacity as New Defendant

Pollock's supervisor, Defendant Varner is responsible for this denial, which he claims violated RLUIPA and the Free Exercise Clause of the First Amendment.  <u>Id.</u> at 73.

As with the Eid al-Fitr feast, Plaintiff argues that the policy of requiring the payment of a fee to receive a special meal from the Eid al-Adha feast is discriminatory toward indigents.  <u>Id.</u> at 73.  Plaintiff asserts that, as the superintendant of SCI-Greene, Defendant Folino ultimately is responsible for the policy.  Consequently, Plaintiff alleges that Defendant Folino is liable for violations of Plaintiff's rights under the Free Exercise Clause of the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and RLUIPA.  <u>Id.</u> at 73.

### E.      <u>Mental Health Claims</u>

Finally, Plaintiff alleges that he was denied mental health evaluations mandated by DOC regulation DC-ADM 802.  <u>Id.</u> at 58.  Plaintiff grieved this issue, and that grievance was denied.  <u>Id.</u> at 58-59.  Plaintiff appealed the denial of this grievance to Moving Defendant Folino, who affirmed the initial decision.  Plaintiff asserts that this violated his rights under the Due Process Clause of the Fourteenth Amendment.  <u>Id.</u> at 60.  This Court notes that the only Moving Defendant included in this claim is Defendant Folino, and then only insofar as he denied Plaintiff's first level grievance appeal.

## II.  Standard of Review

When adjudicating a 12(b)(6) motion, a court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985).  However, a court need not accept inferences drawn by a plaintiff if they are unsupported by the

facts as set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004).  Nor must a court accept legal conclusions set forth as factual

allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   Furthermore, it is not

proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not

alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."

Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S.

519, 526 (1983).

Additionally, a court must dismiss a complaint that does not allege "enough facts to state

a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  This is not to say that

the Supreme Court requires "heightened fact pleading of specifics . . . ."  Id. at 570.  However,

"factual allegations must be enough to raise a right to relief above the speculative level."  Id. at

555.  The Court has made it clear that the requirement that pleadings must be facially plausible,

as expressed in Twombly, applies to all civil suits in the federal courts.  See Ashcroft v. Iqbal,

556 U.S. ____, 129 S.Ct. 1937 (2009).

When ruling on a 12(b)(6) motion, a court may take into consideration information in

addition to the complaint, such as "matters of public record, orders, exhibits attached to the

complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  Factual allegations within documents described

or identified in the complaint also may be considered if the plaintiff's claims are based upon

those documents.  Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d

Cir. 1993). (citations omitted).  Moreover, a district court may consider indisputably authentic

documents without converting a motion to dismiss into a motion for summary judgment.  Spruill

v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff makes such a request – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).


   **III.    Analysis.**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of State law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on*

*other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)).  Moving Defendants make several arguments in support of dismissal of the claims against them.  These will be addressed *seriatim*.


### A.    Administrative Segregation Due Process Claims

In order to state a claim of a violation of procedural due process under the Due Process Clause of the Fourteenth Amendment, Plaintiff must first set out facts which demonstrate that he had a protected liberty interest that was impaired by the Defendants' actions.  <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983) (*overruled in part on other grounds by* <u>Sandin v. Conner</u> 515 U.S. 472 (1995)); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972).  Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  <u>Morrissey</u>, 408 U.S. at 481.

First, with respect to Plaintiff's initial placement in administrative segregation, his claim of a violation of the Fourteenth Amendment's Due Process Cause must fail because he had no liberty interest in his initial placement in administrative confinement.  <u>See</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 705 (3d Cir. 1997) (holding that up to fifteen months of administrative confinement does not implicate a liberty interest).  Additionally, even if he were able to establish that he had a liberty interest in his initial placement in administrative segregation, Plaintiff's factual allegations indicate that he received all of the process that he was due under the Fourteenth Amendment.

Once the deprivation of a liberty interest has been established, an inmate's claims of a due process violation with respect to his administrative confinement must be analyzed under the

Supreme Court's holding in <u>Hewitt</u>.  <u>See also</u> <u>Stevenson v. Carroll</u>, 495 F.3d 62, 70 (3d Cir.

2007) (recognizing that the standard under <u>Hewitt</u> , and not that of <u>Wolff v. McDonnell</u>, 418

U.S. 539 (1974), which applies to prison disciplinary hearings, is the proper one to apply in

addressing the sufficiency of procedural due process in cases involving an inmate's confinement

to administrative segregation).

In <u>Hewitt</u>, the United States Supreme Court held that an "informal, nonadversary

evidentiary review" is sufficient to safeguard the liberty interest of an inmate being placed in

administrative custody.  459 U.S. at 476.  Additionally, this review is constitutionally sufficient

so long as it ensures that an inmate receives

> some notice of the charges against him and an opportunity to
> present his views to the prison official charged with deciding
> whether to transfer him to administrative segregation. Ordinarily a
> written statement by the inmate will accomplish this purpose,
> although prison administrators may find it more useful to permit
> oral presentations in cases where they believe a written statement
> would be ineffective. So long as this occurs, and the decisionmaker
> reviews the charges and then-available evidence against the
> prisoner, the Due Process Clause is satisfied.

<u>Id.</u>  Such a review need not take place prior to the inmate's transfer to administrative custody,

but merely within a reasonable amount of time afterward.  <u>Griffin</u>, 112 F.3d at 707.

From the allegations in Plaintiff's second amended complaint, it is clear that he possessed

"some notice" of the charges against him no later than May 15, 2007 – the date on which he was

provided the so-called "other report" informing him that some person or persons at SCI-Greene

posed a danger to him, and that he could not be protected by other means.  <u>See</u> (ECF No. 4-1) at

1.  Furthermore, it is clear from the factual allegations in the amended complaint that Plaintiff

had a multitude of opportunities to present his views on these charges.  Consequently, Plaintiff's

claims of a due process violation with respect to his initial placement in administrative segregation in 2007 – to the extent that a liberty interest existed at the time of his placement – must be dismissed.  Furthermore, as it is apparent that any leave to amend this claim would be futile, dismissal will be with prejudice.

This determination, however, does not address the issue of whether Plaintiff's continued administrative confinement comports with due process.  Plaintiff alleges that his AC status began on May 15, 2007.  It appears that it was still in existence on the date of filing of the amended complaint on May 11, 2010, and it presumably continues to the date of this writing.  The lengthy duration of Plaintiff's AC status – well beyond the fifteen months endured by the plaintiff in Griffin – supports the plausible inference of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483.  Thus, Plaintiff's amended pleadings with respect to his continued administrative confinement properly implicate a protected liberty interest.

Logically, it would seem that the periodic review of his confinement that Plaintiff concedes he received, as described above, would be sufficient to satisfy due process.  However, Plaintiff argues that these periodic reviews, although numerous, were merely perfunctory – and thus not constitutionally adequate.  In support of this assertion, Plaintiff notes that: (1) he has never been told who poses a danger to him, thus limiting his ability to rebut the charges that have led to his administrative confinement (ECF No 58) at 6; (2) the PRC hearings themselves are only seconds in length, id. at 11; (3) the hearings are not recorded, in violation of State law, id. at 10; and 4) the written reasons given to Plaintiff to justify his continued administrative confinement are on pre-printed forms, and do not indicate what information, if any, the Defendants relied on to come to their conclusions.  Id. at 11-16.  Additionally, Plaintiff indicates

that the PRC review forms come with pre-printed dates indicating the date of the next review, and argues that if the outcome of these reviews were not predetermined, then the date of his next PRC review would not have been printed on the sheet prior to the hearing.  Id. at 16-17; see also (ECF No. 37-10) at 1; (ECF No. 37-14) at 1.

The Supreme Court has recognized that administrative segregation must not be used as a pretext to indefinite confinement.  Hewitt, 459 U.S. at 477 n.9.  To that end, periodic reviews of a prisoner's administrative confinement are required.  Id.  Due process does not require that these reviews allow for the submission of additional evidence or statements.  Instead,

> [t]he decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner-which will have been ascertained when determining to confine the inmate to administrative segregation-and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. . . . [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations. . . .

Id.

While this standard is extremely deferential to the decisions made by prison staff, the Court of Appeals for the Third Circuit has indicated that periodic reviews of administrative confinement are not meaningful, and thus are constitutionally deficient, if they are merely "perfunctory" in nature.  See Shoats v. Horn, 213 F.3d 140, 146 (3d Cir. 2000) (citing Sourbeer v. Robinson, 791 F.2d 1094, 1101 (3d Cir. 1986)).

This Court is mindful of the extreme amount of deference given, under Hewitt, to prison officials reviewing the necessity of administrative confinement of an inmate.  However, Plaintiff's factual allegations with respect to the lack of a constitutionally meaningful review process nudge, if just barely, over the line of stating a plausible claim upon which relief may be

granted. See Twombly, 550 U.S. at 570. Accordingly, Plaintiff's claims of violations of the Due Process Clause of the Fourteenth Amendment, in relation to his continued confinement in administrative segregation, will not be dismissed.

Plaintiff also claims that his hearings before various PRC panels which included Moving Defendant Winfield, and New Defendants Workman, Grainey and Walker, were constitutionally deficient because they were not "impartial tribunals." Specifically, Defendant Winfield was allegedly involved in the initial decision-making process to confine Plaintiff to administrative segregation upon his arrival at SCI-Greene, (ECF No. 40) at 14, and the input provided by New Defendants Grainey, Workman, and Walker in their capacities as captains of the SCI-Greene RHU were instrumental to decisions to continue his administrative confinement. Id at 56-57.

It is well established that prisoners subject to *disciplinary* proceedings are entitled to an impartial hearing officer. See Wolff, 418 U.S. at 570-71. However, in a prison context, the requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." Hewitt, 459 U.S. at 472. Prison hearing officers "are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996).

Plaintiff has failed to state a claim of a violation of due process under his "impartial tribunal" theory. Assuming, *arguendo*, that due process demands the same degree of impartiality in the context of administrative confinement that is required at disciplinary hearings, Plaintiff has not made any allegations that, if true, would allow this Court to conclude that Defendant Winfield could not provide an impartial decision when he sat on various PRC panels reviewing Plaintiff's AC status. Additionally, Plaintiff received multiple reviews from PRC panels on which Defendant Winfield did not sit, and all came to the conclusion that Plaintiff's AC status

should be continued.[12]  Accordingly, Plaintiff's claims that Moving Defendant Winfield's inclusion on some PRC review panels somehow deprived Plaintiff of an "impartial tribunal" will be dismissed.  See Colon v. Goord, No. 9:05-CV-129, 2008 WL 783364, at *8-*9 (N.D.N.Y. Mar. 20, 2008).  However, as it is not apparent that leave to amend would necessarily be futile, dismissal will be without prejudice with respect to this claim against Moving Defendant Winfield.

Additionally, Plaintiff's complaints that the evidence or notices failed to meet certain standards set forth in various DOC guidelines or State law is not of constitutional significance, and thus, is not cognizable under § 1983.  "'In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law.  The two are not the same.'"  Brown v. Dep't of Corrs., No. 05-347, 2007 WL 4322980 at *6 (W.D.Pa. Aug. 29, 2007) (Hay, Mag.J) (adopted by Brown v. Beard, No. 2:05cv347, 2007 WL 3274145, at *1 (W.D.Pa. Nov. 5, 2007) (Cercone, J.)) (quoting Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir.1986)).  See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

---

[12] Plaintiff makes allegations that New Defendants Workman, Grainey and Walker also sat on several PRC panels before which he appeared, and were allegedly tainted in a manner similar to Moving Defendant Winfield.  (ECF No. 40) at 56-57.  However, as with Moving Defendant Winfield, Plaintiff fails to allege any facts that would lead to the conclusion of bias. Furthermore, except for the hearing of June 23, 2009 – which included both Defendants Winfield and Walker as panel-members – it appears from Plaintiff's factual allegation that these allegedly biased Defendants never constituted the majority of any three-member PRC panel.

**B.** **Eighth Amendment Claims**

Moving Defendants interpret Plaintiff's factual allegations to be a possible attempt to state a claim for a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause with respect to his administrative confinement. (ECF No. 51) at 6. While Plaintiff does not raise this legal argument in regard to his amended complaint, this Court will address the issue out of an abundance of caution.

The Eight Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quote omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone insufficient to raise a constitutional claim – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable

human need such as food, warmth, or exercise . . . ."  See Wilson v. Seiter, 501 U.S. 294, 304

(1991).  In applying this test, the Court acknowledges that "[t]he Constitution . . . does not

mandate comfortable prisons."  Id.  at 298.  "In considering whether a prisoner has been deprived

of his rights, courts may consider the length of time that the prisoner must go without those

benefits."  Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437

U.S. 678, 685 (1978)).

    With respect to the second element, an inmate must demonstrate deliberate indifference

to prison conditions on the part of prison officials.  Farmer, 511 U.S. at 834-35; Wilson, 501 U.S.

at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  This requires a court to determine,

subjectively, whether the officials acted with a sufficiently culpable state of mind.  Farmer, 511

U.S. at 834.  The deliberate indifference standard has been defined as requiring that "the official

knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  Id. at 837.

> [A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the
> inference. . . .  The Eighth Amendment does not outlaw cruel and
> unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838.

    To the extent that Plaintiff attempts to assert an Eighth Amendment claim with respect to

his administrative segregation, he has not alleged any conditions of his confinement that would

indicate that he has been denied "the minimal civilized measure of life's necessities."

Consequently, such a claim, to the extent that Plaintiff attempts to make it, must fail, and will be dismissed.

## C.       Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). In order to state a claim under the Equal Protection Clause, a plaintiff must, as a threshold matter, allege facts supporting the conclusion that:

> (1) the complaining person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *2 (E.D.Pa. Aug. 20, 1999) (internal quotations omitted); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

Under this standard, Plaintiff's assertion that his placement in administrative custody violates the Equal Protection Clause must be rejected. First, Plaintiff's conclusory assertion that African-Americans at SCI-Greene are being placed and held in the RHU in a discriminatory manner is not supported by his underlying factual allegations. The data provided by Plaintiff – which constitute the sole basis for this claim in the amended complaint – indicate that African-Americans, proportionally, are housed in the RHU in numbers that are only slightly greater than the inmate population as a whole. Plaintiff's allegations, even if true, are simply not sufficient to create a plausible inference of disparate treatment. See Twombly, 550 U.S. at 570 (requiring that

plaintiff's "nudge[]their claims across the line from conceivable to plausible" in order to survive dismissal).  Similarly, Plaintiff's conclusory statement that Muslims at SCI-Greene suffer from discriminatory placement in the RHU is also unsupported by factual allegations that, if true, would allow for the conclusion that they are treated differently based on some impermissible basis.  Additionally, Plaintiff's Equal Protection claims are undermined by the documents that he submits in support of his complaint, and on which he relies therein, which indicate that he personally was placed in administrative confinement due to a threat that is posed to him by other inmates.

Accordingly, Plaintiff's Equal Protection claims stemming from his confinement to the RHU will be dismissed.  However, as this Court cannot conclude that leave to amend necessarily would be futile, dismissal of these claims will be without prejudice.

Like his claims regarding his administrative confinement, Plaintiff's factual allegations with respect to being required to pay for special religious foodstuffs do not state a claim under the Equal Protection Clause because Plaintiff does not allege disparate treatment.  The allegations in the amended complaint indicate that all individuals, regardless of financial resources, were required to pay for dates and special food items from the Eid al-Fitr and Eid al-Adha feasts if they chose to partake.  Accordingly, Plaintiff's Equal Protection claims with respect to those incidents will be dismissed.  However, given the fact that Plaintiff's factual allegations clearly indicate that he was not treated differently from any other inmate with respect to these issues, it is apparent that leave to amend this claim would be futile.  Thus, dismissal will be with prejudice.

### D.    **Retaliation Claims**

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (internal quotes and citation omitted); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  In order to state a *prima facie* case of retaliation, a prisoner must allege facts which indicate:

> 1)  the conduct in which he was engaged was constitutionally protected;
>
> 2)  he suffered "adverse action" at the hands of prison officials; and
>
> 3)  his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  To show an "adverse action," Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting Allah v. Seiverling, 229 F.3d at 225).

If a plaintiff proves the above elements, the burden shifts to the state actor to prove that it would have taken the same action even without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  In the prison context, the state actor may rebut a plaintiff's claim by showing that his actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

In the case at bar, Plaintiff's conclusory assertion that Moving Defendants retaliated against by confining him to the RHU is supported by his underlying factual allegations that it was based on the filing of grievances and three specific lawsuits – which is clearly constitutionally protected conduct.  See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  Furthermore, Plaintiff's alleged placement in administrative segregation is certainly enough to support the plausible inference that he suffered an "adverse action."  Thus, the first two elements of the above test are met.

However, Plaintiff fails to allege any facts that, if proven true, would support the conclusion that the filing of his suits was a substantial or motivating factor in Moving Defendants' decision to confine him to the RHU.  To the contrary, the exhibits submitted by Plaintiff with his complaint, and on which he relies, undermine that assertion – indicating instead that Plaintiff was placed on AC status because of threats to his safety.   Plaintiff's bald assertion of retaliation, without factual allegations that, if true, would support the inference of some nexus between the filing of his lawsuits and grievances, is simply insufficient to meet the third element required to state a claim for retaliation.  Accordingly, this claim will be dismissed.  However, as it is not apparent that leave to amend would be futile, dismissal will be without prejudice.


**E.**      **First Amendment Access to the Courts Claims**

Plaintiff alleges that his right to access the courts was infringed by various Defendants because they would not provide him access to inmate legal assistants.

The right of access to the courts is guaranteed by the First Amendment of the United States Constitution.  In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities

to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds. For example, in Lewis, the Supreme Court held that Bounds did not recognize an independent right for prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. Lewis, 518 U.S. at 351. Thus, the Court in Lewis held that, in order to challenge a denial of this right of access to the courts successfully, it is not enough for an inmate to establish that a law library provided was inadequate or he was denied access to legal materials; rather, he must establish that such inadequacies in accessing legal materials caused him actual harm.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider when determining whether a plaintiff has alleged a viable claim of denial of the right to access to the courts. Specifically, the Supreme Court held that a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement mandates that a plaintiff must clearly allege in the complaint the official acts that

frustrated the underlying litigation. Third, a plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Id. at 414. This final requirement is important in order "to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." Id. at 416.

Plaintiff's claims with respect to Moving Defendants Jackson, Smith, Brendan Martin, McCombie, Harry, Swartz, Jeffrey Martin, Coleman, Winfield and Folino fail for a number of reasons. First and foremost, Plaintiff has failed to allege, with necessary specificity, *any* facts regarding his underlying State court habeas case that would allow this Court even to speculate on its merits. Thus, even construing Plaintiff's claims as liberally as possible, his pleadings are clearly deficient under Christopher.

Second, it appears that Plaintiff has failed to exhaust his administrative remedies against Moving Defendants Jackson, Smith, Brendan Martin, McCombie, Harry, Swartz, Jeffrey Martin, Coleman, Winfield and Folino with respect to this claim, thus defaulting on them procedurally.

Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion requirement requires the following:

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a). Before filing a civil action, a prisoner-plaintiff must exhaust his administrative remedies. Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), cert. granted, 531 U.S. 956 (2000), aff'd, 532 U.S. 731 (2001). There is no "futility" exception to the

administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)).

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . .").  This is the functional equivalent of the procedural default requirement in the habeas context.  Spruill, 372 F.3d at 228-29.  While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial."  Id. at 228-29; Nyhuis, 204 F.3d at 77-78.

The Court of Appeals for the Third Circuit has held that failure to comply with the Pennsylvania DOC's requirement of naming all individuals involved in a grievable event will result in that grievance being insufficient for the purposes of § 1997e, absent some other indication that would put prison officials on notice of the persons claimed to be guilty of wrongdoing.  Spruill, 372 F.3d at 233-35.

Plaintiff has provided the grievances that he filed regarding the dismissal of his State habeas case as exhibits to his amended complaint, and specifically invokes them therein in support of his arguments.  See (ECF Nos. 37-2 – 37-7).  Nowhere in his grievance or appeals does Plaintiff name Moving Defendants Jackson, Smith, Brendan Martin, McCombie, Harry, Swartz, Jeffrey Martin, Coleman, Winfield or Folino as culpable parties, nor is there any other indication that would put prison officials on notice of their alleged involvement.  Plaintiff clearly has failed to exhaust his administrative remedies with respect to these Moving Defendants.

Thus, his claims with respect to them will be dismissed. Furthermore, as it appears that any leave to amend would be futile, this dismissal will be with prejudice.

### F.    Grievance Claims

Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Heleva v. Kramer, 214 F.App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)). As Moving Defendants correctly argue, any allegations that any Defendant ignored or failed to respond properly to one of Plaintiff's grievances, at worst, would abrogate the need to exhaust administrative remedies with respect to the underlying claim. Accordingly, all claims raised against Moving Defendants for failing to respond to Plaintiff's grievances will be dismissed, as they are not cognizable under § 1983.[13] Given the obvious futility of providing leave to amend this claim, dismissal will be with prejudice.

### G.    Respondeat Superior

It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for § 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

---

[13] This finding dismisses Plaintiff's only claim against Defendant Davis.

Additionally, a state official in a supervisory role has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights. See Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990). However, in cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, § 1983 liability may attach. See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). At a minimum, such liability attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)). However, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a State's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff makes a myriad of claims against various Moving Defendants, including Defendants Folino, Mark, Watson, Reisinger, Scott, Geehring, Muhammed, Smith, Capozza, and Davis, as well as unserved "Defendant" Varner, which reduce to allegations that they are liable

for violating Plaintiff's rights merely by denying Plaintiff's administrative grievances or appeals, or by affirming such denials. With respect to most such claims, Plaintiff has failed to allege the personal involvement of these Defendants and, as such, these claims will be dismissed. Additionally, as it appears that the grant of leave to amend would be futile, dismissal will be without prejudice.[14]

The exceptions to this analysis are Plaintiff's claims that Defendant Folino is responsible for the policy at SCI-Greene requiring Plaintiff, an indigent who has been confined to administrative segregation for multiple years, to pay for special food items for the feasts of Eid al-Fitr and Eid al-Adha.[15] This is sufficient to allege the personal involvement of Defendant Folino with respect to the RLUIPA claims. See Part III.I, *infra*. As such, these claims will be allowed to proceed.

---

[14] This disposes of all claims against Defendants Scott and Reisinger.

[15] Plaintiff makes the unsupported assertion that Defendant Folino's policies with respect to the feasts of Eid al-Fitr and Eid al-Adha violate the Fourteenth Amendment's Due Process Clause. This appears to be a substantive due process claim (indeed, this Court can discern not even the hint of a liberty interest in Plaintiff's allegations with respect to this issue). The Supreme Court of the United States has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the "more-specific provision rule." Cnty. of Sacramento, 523 U.S. at 843-44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259-60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Here it is clear that the acts of which Plaintiff complains arise under the First Amendment. Consequently, Plaintiff's claims of violations of substantive due process, must be dismissed. As it would be futile to allow leave to amend, dismissal will be with prejudice.

## H.    Mail Claims

It is well established that the then-existing DOC policy of opening mail without attorney control numbers outside of the presence of an inmate – even if that mail came from an attorney or a court – is constitutional.  See, e.g., Fontroy v. Beard, 559 F.3d 173, 174 (3d Cir. 2009). Plaintiff's factual allegations indicate that, even though the mail that was opened outside of his presence was sent by attorneys or the courts, none of it bore attorney control numbers.  As it is clear from Plaintiff's factual allegations that no underlying constitutional violation took place with respect to the opening of his mail, claims based on such alleged acts by Moving Defendants must be dismissed.  As the grant of leave to amend clearly would be futile as a matter of law, dismissal will be with prejudice.[16]

## I.    Claims under RLUIPA

RLUIPA provides in part: "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless that burden "is in furtherance of a compelling governmental interest" and is accomplished by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); see also Cutter v. Wilkinson, 544 U.S. 709, 712 (2005).  A "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.§ 2000cc-5(7)(A); see also Cutter, 544 U.S. at 715.

The language of the statute provides "broad protections of religious exercise."  42 U.S.C. § 2000cc-3(g).  However, the Supreme Court has recognized that, in promulgating RLUIPA, Congress also "anticipated that courts would apply the Act's standard with 'due deference to the

---

[16] This dismisses Plaintiff's only claim against Defendant Geehring.

experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" <u>Cutter</u>, 544 U.S. at 723. In the event that an inmate's requested religious accommodation would "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." <u>Id.</u> at 726; <u>see</u> <u>also</u> <u>Mincy v. DeParlos</u>, No. 1:08-CV-0507, 2009 WL 2588848, at *4 (M.D.Pa. Aug. 19, 2009).

In order to prevail under RLUIPA, a plaintiff must show that his religious exercise has been substantially burdened by the challenged conduct. <u>Washington v. Klem</u>, 497 F.3d 272, 277-78 (3d Cir. 2007). The Court of Appeals for the Third Circuit has defined a "substantial burden" in the context of RLUIPA to mean

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting the benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

<u>Washington</u>, 497 F.3d at 280 (emphasis in original). Only after this test has been met is the government actor required to establish that the challenged conduct furthers a compelling interest, and that the least restrictive means are being used to do so. <u>Id.</u> at 283-84.

In the case at bar, Moving Defendants do not dispute that Plaintiff's factual allegations with respect to the use of dates during Ramadan, and his desire to take part in the feasts of Eid al-Fitr and Eid al-Adha, are "religious expressions" within the meaning of this term under RLUIPA. Instead, Moving Defendants argue that Plaintiff has not adequately pleaded that the

prison policy that he pay a fee to receive dates and special foodstuffs from these feasts constitutes a "substantial burden" under Washington. (ECF No. 51) at 15.

After a thorough review of Moving Defendants' arguments, this Court is unconvinced that Plaintiff's RLUIPA claims warrant dismissal under the Rule 12(b)(6) standard. Specifically, this Court is concerned by Plaintiff's factual allegations of indigence, combined with his allegedly lengthy administrative segregation – which, at the very least, limits his ability to obtain prison employment. These factors are sufficient to support the plausible conclusion that the prison's policy requiring payment to partake in these observances places "substantial pressure" on an individual in Plaintiff's very specific circumstances. Thus, out of an abundance of caution, Moving Defendants' motion to dismiss will be denied with respect to Plaintiff's claims involving prison policies that denied him free dates during Ramadan, and free special food items from the feasts of Eid al-Fitr and Eid al-Adha.

However, with respect to Plaintiff's claims for damages under RLUIPA, this Court has held in the past that "RLUIPA does not authorize money damages against individuals." Brown, 2007 WL 4322980, at *16. This Court also found that the States do not waive their sovereign immunity as to damages actions under RLUIPA and, consequently, any "official capacity" claims against State defendants are barred by the Eleventh Amendment. Id. at *17. In spite of Plaintiff's assertion that this Court is not bound by the holding in that case, and thus should deviate from it, he presents no persuasive argument for doing so. Accordingly, Plaintiff's claims for money damages under RLUIPA will be dismissed.

**J.      First Amendment Free Exercise Claims**

The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "[A]ll prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir.1996) (*overruled in part on other grounds*, City of Boerne v. Flores, 521 U.S. 507 (1997)) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by demonstrating that it violated the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less

liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 415-18; <u>Turner</u>, 482 U.S. at 89-91. These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." <u>Ramzidden v. Monmouth County Sheriff Dept.</u>, No. 09-4829, 2010 WL 1752540, at *11 (D.N.J. Apr. 30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, <u>Thornburgh</u>, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. <u>Williams v. Morton</u>, 343 F.3d 212, 217 (2003) (citing <u>Overton v. Bazzetta</u>, 539 U.S. 126 (2003)).

In support of dismissal, Moving Defendants assert their obvious interest in "controlling the expenditure of scarce state resources. . . ." (ECF No 51) at 20. They also note that "according to the Amended Complaint, Plaintiff was able to fast and also to break his fast, just not in the manner he desired." <u>Id.</u> at 21. Plaintiff also makes no allegations that the meals that he received to break his fasts and on the feast days in question were objectionable to his religion, nor does he allege facts that, if true, would lead to the conclusion that he was unable to practice his religion. Finally, it has been held that the First Amendment, while protecting the right of individuals to engage in the practice of their religions, does not require the government to subsidize that right. <u>See</u> <u>Freedom of Religion Found., Inc. v. McCallum</u>, 179 F.Supp.2d 950, 981 (W.D.Wis. 2002) (citing <u>Regan v. Taxation with Representation of Washington</u>, 461 U.S. 540, 546 (1983)).

Despite addressing similar subject matter, the Free Exercise Clause of the First Amendment provides relief in a much more limited set of circumstances that does RLUIPA. Accordingly, after examining the amended complaint in light of the <u>Turner</u> factors, it is clear that, while his allegations of fact are adequate to invoke the relatively broad protections afforded inmates under RLUIPA, they are insufficient to state a claim under the higher standard of the Free Exercise Clause. As such, Plaintiff's First Amendment claims with respect to breaking his fast with dates during Ramadan, and receiving free special food items from the feasts of Eid al-Fitr and Eid al-Adha, will be dismissed. Furthermore, as it appears that any opportunity to amend would be futile, dismissal will be with prejudice.

### K.    State Law Claims

The doctrine of sovereign immunity bars claims for damages against the Commonwealth, its officials, and employees acting within the scope of their duties.[17] 1 Pa.C.S.A. § 2310. There are nine instances in which sovereign immunity has been waived by statute. These are negligent acts pertaining to: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(b)(1)-(9). These nine exceptions must be "strictly construed and narrowly interpreted." <u>Brown v. Blaine</u>, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003). "Commonwealth employee[s][are] protected by

---

[17] Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is calculated, at least in part, by a purpose to serve the employer. <u>Brumfield v. Sanders</u>, 232 F.3d 376, 380 (3d Cir. 2000), <u>citing</u> Restatement (Second) Agency § 228.

sovereign immunity from the imposition of liability for intentional tort claims." La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

In the case at bar, it is not disputed that Defendants' alleged bad acts were performed within the scope of their duties as employees of the Commonwealth. Indeed, it is apparent from the factual allegations in the complaint that Defendants were acting within the scope of their employment as prison officials when they committed their alleged wrongful acts. It is also clear that none of Plaintiff's State tort law claims fall within the above nine exceptions. Furthermore, it appears that no opportunity to amend would change this fact. Accordingly, Plaintiff's state law tort claims against Defendants, will be dismissed with prejudice.

Plaintiff's claims against Moving Defendants under Article I, § 26 of the Pennsylvania Constitution is more problematic. In support of their motion to dismiss, Moving Defendants cite to Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Cmwlth. 2006), a recent case in which the Pennsylvania Commonwealth Court, sitting *en banc*, declined to create a cause of action for money damages in the case of an alleged violation of Article I, § 8 of the Pennsylvania Constitution. Id. at 1216. While Jones is limited to its facts, and does not address the State Constitutional provision invoked by Plaintiff, the holding of the Commonwealth Court did indicate the Pennsylvania courts' reluctance to create a remedy under the Constitution of Pennsylvania without benefit of legislative action. Id.

Neither Plaintiff nor Moving Defendants have identified any case in which the courts of Pennsylvania have explicitly held that a private cause of action does or does not exist under Article I, § 26 of the Pennsylvania Constitution. This Court, in conducting independent research into this claim, was likewise unable to locate any such precedent from the State courts of Pennsylvania.

In <u>Warren v. Township of Derry</u>, the United States District Court for the Middle District of Pennsylvania, when confronted with a plaintiff's claim for recovery under Article I, § 26 of the Pennsylvania Constitution, noted that "deference to the state appellate courts on this issue [was] appropriate" and therefore declined to exercise supplemental jurisdiction over this obviously complex and unresolved issue of Pennsylvania State law, invoking 28 U.S.C § 1367(c)(1).  <u>See</u> <u>also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc</u>, 140 F.3d 478, 487 (3d Cir. 1998) (affirming a federal court's refusal to extend jurisdiction over a State law issue that would require that court to interpret a State's constitution, as deferral of the matter was "out of respect for the right of a state court system to construe that state's own constitution") (citing <u>Doe v. Sundquist</u>, 106 F.3d 702, 708 (6th Cir. 1997)).  Accordingly, this Court will decline to exercise supplemental jurisdiction over this obviously complicated issue of State constitutional law.  Thus, Plaintiff's claims arising from the Pennsylvania Constitution are dismissed for lack of subject matter jurisdiction, without prejudice to him bringing those claims in State court.

This Court notes that Plaintiff alleges that his periodic hearings before the PRC were not recorded, and thus were invalid under Pennsylvania State law.  <u>See</u> 2 Pa.C.S.A. § 504; <u>see</u> <u>also</u> <u>Mason v. Dep't of Corrs.</u>, 886 A.2d 724 (Pa. Cmwlth. 2005) (holding that a DOC assessment adjudication against an inmate was invalid because it was not recorded).  Defendants do not adequately brief the issue of whether this State law provides some avenue of relief for Plaintiff – in spite of the fact that it is clear that it does not rise to a due process violation under <u>Sandin</u>.  Consequently, nothing in this Court's opinion should be construed to address this issue.

**L.     Defendant Beard.**

As Moving Defendants properly note, Plaintiff makes no allegations against Defendant Beard.  Instead, Plaintiff seems content only to list his name in captions and certificates of service.   Given the fact pattern that Plaintiff alleges, this Court is at a loss to construe a situation in which Defendant Beard could have violated any of Plaintiff's federal rights.  Moving Defendants raised this argument in their brief supporting their motion to dismiss, and Plaintiff failed to address the issue in his responses.  As such, it appears that any opportunity given by this Court to Plaintiff to amend his complaint would be futile.  Cf. Arrango v. Winstead, 352 F.App'x 664, 666 (3d Cir. 2009) (noting that the district court's refusal to grant leave to amend was proper given that no facts were alleged from which the court could infer that the plaintiff was denied a constitutional right, and plaintiff had failed to respond when this issue was raised in a motion to dismiss).  Thus, dismissal of this Defendant will be with prejudice.

**M.     New Defendants**

As noted above, Plaintiff named several additional Defendants in his amended complaint that did not appear in the initial complaint.  Despite being ordered to provide copies of the amended complaint and other service documents for these New Defendants, Plaintiff has failed to do so as of the date of this writing.  Plaintiff was ordered to show cause why his claims against New Defendants should not be dismissed (ECF No. 59), to which he responded that he was precluded by his poverty from providing the necessary documents and copies of the amended complaint (ECF No. 61).  The magistrate judge issued a report and recommendation recommending the dismissal of New Defendants from this case due to Plaintiff's failure to prosecute.  (ECF No. 62).  Plaintiff did not file objections.  Upon *de novo* review of the

pleadings and documents in this case, together with the report of the magistrate judge (ECF No. 62), this Court will dismiss New Defendants, and adopt the report as our opinion concerning the matter.

An appropriate order will follow.

March 29, 2011                    BY THE COURT:


                                  s/Nora Barry Fischer
                                  NORA BARRY FISCHER
                                  UNITED STATES DISTRICT JUDGE



**cc:**
**NATHAN RILEY**
CT-8571
SCI Greene
175 Progress Drive
Waynesburg, PA 15370